**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

**In re:**

| | |
|---|---|
| **DALE THOMAS SAUL,** | **CHAPTER 13** |
| **DEBTOR.** | **CASE NO. 16-19741** |

**WELLS FARGO BANK, N.A.,**

      **MOVANT,**

**vs.**

**DALE THOMAS SAUL**
**and TIMOTHY P. BRANIGAN, TRUSTEE,**

      **RESPONDENTS.**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**<u>(REAL PROPERTY LOCATED AT 3499 BROOKESIDE DRIVE,</u>**
**<u>CHESAPEAKE BEACH, MD 20732)</u>**

Wells Fargo Bank, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **3499 Brookeside Drive, Chesapeake Beach, MD 20732** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1. A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on July 20, 2016.

2. A Chapter 13 Plan was confirmed on May 2, 2017.

3. The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $152,600.00 (the "Note"). A copy of the Note is attached hereto as <u>Exhibit A</u>.

4. Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust. The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Calvert, Maryland. A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

5. The terms of the Note were amended by a loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated December 7, 2016 (the "Loan

Modification Agreement"). A copy of the Loan Modification Agreement is attached hereto as Exhibit C.

6.       Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or assignee of the mortgage or deed of trust.

7.       As of December 01, 2017, the unpaid principal balance due is $142,836.48 and the outstanding amount of Obligations less any partial payments or suspense balance is $146,018.64.

8.       The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of December 01, 2017:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 5 | 08/01/2017 | 12/01/2017 | $939.77 | $4,698.85 |
| Less post-petition partial payments (suspense balance): | | | | ($92.86) |

**Total Payments:  $4,605.99**

9.       As of December 01, 2017, the total post-petition arrearage/delinquency is $4,605.99, consisting of (i) the foregoing total of post-petition payments in the amount of $4,605.99, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

10.       The following chart sets forth the pre-petition payments and any fees due pursuant to the terms of the Note at the time of bankruptcy filing:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| N/A | N/A | N/A | $0.00 | $0.00 |
| Less pre-petition partial payments (suspense balance): | | | | ($0.00) |

Total Payments:  $0.00

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

**Total:  $0.00**

11.     The following chart sets forth the contractual payments and any fees due pursuant to the terms of the Note as of December 01, 2017:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 5 | 08/01/2017 | 12/01/2017 | $939.77 | $4,698.85 |
| Less partial payments (suspense balance): | | | | ($92.86) |

Total Payments:  $4,605.99

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

**Total:  $4,605.99**

12.     The estimated value of the Property is $285,500.00.  The basis for such valuation is: Debtor's Schedules, a copy of which is attached hereto as <u>Exhibit D</u>.

13.     Cause exists for relief from the automatic stay for the following reasons:

    i.     Movant's interest in the Property is not adequately protected.

    ii.     Post-Petition payments required by the confirmed plan have not been made to Movant.

    iii.     Pursuant to 11 U.S.C. §362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to §362(d)(2)(B), the Property is not necessary for an effective reorganization.  According to the Debtor's schedules, there is a second lien on the property in the approximate amount of $118,179.25.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.


Dated: December 6, 2017.

WELLS FARGO BANK, N.A.

By:/s/Randa S Azzam          
Randa S. Azzam, Esquire, Bar No. 22474
Kimberly B. Lane, Esquire, Bar No. 18513
Samuel I. White, P.C.
611 Rockville Pike
Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
RAzzam@siwpc.com


## CERTIFICATE OF SERVICE

I certify that on December 6, 2017, the foregoing Motion was served via CM/ECF on Timothy P. Branigan, Trustee, and James D. Ealley, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Dale Thomas Saul, Debtor, 3499 Brookeside Drive, Chesapeake Beach, MD 20732.

**/s/Randa S Azzam**        
Randa S. Azzam, Esquire
Samuel I. White, P. C.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

**In re:**

| | |
|---|---|
| **DALE THOMAS SAUL,** | **CHAPTER 13** |
| **DEBTOR.** | **CASE NO. 16-19741** |

**WELLS FARGO BANK, N.A.,**

      **MOVANT,**

**vs.**

**DALE THOMAS SAUL**
**and TIMOTHY P. BRANIGAN, TRUSTEE,**

      **RESPONDENTS.**

### NOTICE OF MOTION AND OPPORTUNITY TO OBJECT TO MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY AND HEARING THEREON

Wells Fargo Bank, N.A. ("Movant"), has filed papers with the court seeking relief from the automatic stay of 11 U.S.C. §362(a) to enable it to proceed to foreclose on its Deed of Trust referencing the subject property known as **3499 Brookeside Drive, Chesapeake Beach, MD 20732**.  Your rights may be affected.  You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case.  (If you do not have a lawyer, you may wish to consult one.).

If you do not want the court to grant the motion for relief from the stay, or if you want the court to consider your views on the motion, then by **December 20, 2017** (parties served by mail may add three 3 (additional days to the response deadline) you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

| | |
|---|---|
| Randa S. Azzam | Timothy P. Branigan |
| 611 Rockville Pike | 9891 Broken Land Parkway |
| Suite 100 | Suite 301 |
| Rockville, MD 20852 | Columbia, MD 21046 |

If you mail a copy rather than deliver your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for **January 8, 2018** at **10:00 AM**, in the United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane Suite 300, Greenbelt, MD 20770, Courtroom **3-E**.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE SERVED:  December 6, 2017

      By: /s/Randa S Azzam
      Randa S. Azzam, Esquire, Bar No. 22474

Kimberly B. Lane, Esquire, Bar No. 18513
Samuel I. White, P. C.
611 Rockville Pike
Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
RAzzam@siwpc.com

CERTIFICATE OF SERVICE

I certify that on December 6, 2017, the foregoing Notice of Motion was served via CM/ECF on Timothy P. Branigan, Trustee, and James D. Ealley, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Dale Thomas Saul, Debtor, 3499 Brookeside Drive, Chesapeake Beach, MD 20732.

**/s/Randa S Azzam**
Randa S. Azzam, Esquire
Samuel I. White, P. C.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| In re: | Chapter 13 |
|---|---|
| **DALE THOMAS SAUL** | Case No. 16-19741 |
| Debtor. | |

### DECLARATION IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Judith Mae Bonds, declare under penalty of perjury as follows:

1.       I am a  Vice President Loan Documentation of Wells Fargo Bank, N.A. ("Wells Fargo") and am authorized to sign this declaration on behalf of Wells Fargo.  This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.       As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records.  I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor concerning the property securing such Account.

3.       The information in this declaration is taken from Wells Fargo's business records regarding the Account.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly conducted business activities.  It is the regular practice of Wells Fargo to create and maintain such records.

4.       The Debtor has executed and delivered or is otherwise obligated with respect to the attached promissory note (the "Debt Agreement").  Pursuant to the attached Deed of Trust (the "Security Instrument"), all obligations of the Debtor under and with respect to the Debt Agreement and the Security Instrument are secured by the property referenced in the Motion. The terms of the Debt Agreement were amended by the attached loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated December 7, 2016 (the "Loan Modification Agreement").

5.       As of  December 01, 2017, there are one or more defaults in paying post-petition amounts due with respect to the Debt Agreement.

6.       As of December 01, 2017, the unpaid principal balance of the Debt Agreement is $142,836.48.

403-NTL-V9

7.     The following chart sets forth those post-petition payments, due pursuant to the terms of the Debt Agreement, that have been missed by the Debtor as of December 01, 2017:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 5 | 08/01/2017 | 12/01/2017 | $578.63 | $361.14 | $939.77 | $4,698.85 |
| Less post-petition partial payments (suspense balance): | | | | | | ($92.86) |
| | | | | | Total: | $4,605.99 |

8.     As of December 01, 2017, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $4,605.99 consisting of (i) the foregoing total of missed post-petition payments in the amount of $4,605.99, plus (ii) the following post-petition fees:[1]

| Description | Amount |
|---|---|
| N/A | $0.00 |

9.     The following documents are attached as exhibits and incorporated herein by reference:

(a)     Attached hereto as Exhibit A is a true and correct copy of the Debt Agreement.

(b)     Attached hereto as Exhibit B is a true and correct copy of the Security Instrument.

(c)     Attached hereto as Exhibit C is a true and correct copy of the Loan Modification Agreement.

(d)     Attached hereto as Exhibit 1 is a post-petition payment history.

(e)     Attached hereto as Exhibit 2 is an addendum listing all fees and charges assessed to the account of the Debtor post-petition.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Judith Mae Bonds*

Name: Judith Mae Bonds
Title: Vice President Loan Documentation
Company: Wells Fargo Bank, N.A.
Date:   December 04, 2017

---

[1]     The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, Wells Fargo will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.



**Exhibit A**

# NOTE

AUGUST 24, 2012

[Date]                                    [City]                                    [State]

3499 BROOKESIDE DRIVE, CHESAPEAKE BEACH, MD 20732

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ *****152,600.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   3.750   %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **FIRST**   day of each month beginning on OCTOBER 01, 2012   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 01, 2042   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758   or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ ****706.71   .

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
NMFL 3200 (CNOT)  Rev 7/2011

Wolters Kluwer Financial Services

Initials: DIS

Form 3200 1/01
VMP5N (0803).00
Page 1 of 3

Represents Redacted Information

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials 

Form 3200 1/01
VMP5N (0803).00
Page 2 of 3

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Dale T. Saul_

_____ (Seal)          _____ (Seal)
DALE  T  SAUL                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_[Sign Original Only]_

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (0803).00
Page 3 of 3

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

0013

*Return*

**OPTIMUM TITLE, LLC**
9560 Marlboro Pike, #101
Upper Marlboro, MD 20772
301-599-1514

BK 4022 PG 0127

Exhibit

B

Return To:
FINAL DOCS T7408-01F

4101 WISEMAN BLVD BLDG 108
SAN ANTONIO, TX 78251-4200

*Tax#*

Prepared By:
WELLS FARGO BANK, N.A.

800 WALNUT STREET,, DES MOINES,
IA 503093605

──────────── [Space Above This Line For Recording Data] ────────────

*Refinance*

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated AUGUST 24, 2012
together with all Riders to this document.

**(B) "Borrower"** is DALE T SAUL, A SINGLE PERSON

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is WELLS FARGO BANK, N.A.

Lender is a **NATIONAL ASSOCIATION**
organized and existing under the laws of THE UNITED STATES

| LR IMPROVE SU | 40.00 |
| RECORDING FEE | 20.00 |
| RECORDATION T | 40.00 |
| TOTAL | 100.00 |
| Rest CV01 | Rcpt # 35544 |
| KPS   NYD  Blk # 144 | |
| Oct 01, 2012 | 03:02 PM |

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3021 1/01
NMFL #3021(MDCD) Rev 4/24/2006
**VMP**®-6(MD) (0602)

Page 1 of 15     Initials: DTS

VMP Mortgage Solutions, Inc.

Represents Redacted Information

BK4022PG0128

Lender's address is 101 NORTH PHILLIPS AVENUE, SIOUX FALLS, SD  57104

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is JOHN BURSON, ESQ.
13135 LEE JACKSON HWY #201, FAIRFAX, VA  22033
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 24, 2012
The Note states that Borrower owes Lender ONE HUNDRED FIFTY TWO THOUSAND SIX HUNDRED
AND 00/100                                                                      Dollars
(U.S. $ *******152,600.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than SEPTEMBER 01, 2042
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☐ Other(s) [specify]


(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: 

BK 4022 PG 0129

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **CALVERT** :

      [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION**

**TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758**

Parcel ID Number: 103358                         which currently has the address of

**3499 BROOKESIDE DRIVE**                                       [Street]

**CHESAPEAKE BEACH**                    [City], Maryland  **20732**     [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials 

    -6(MD) (0602)                       Page 3 of 15                            Form 3021 1/01

BK4022PG0130

# Exhibit A

Being known and designated as Lot 26, Plat Three, in the subdivision known as "BROOKSIDE", as per plat recorded among the Land Records of Calvert County, Maryland in Liber ABE 1 at folio 270.

BK4022PG0131

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

VMP®-6(MD) (0802)                          Page 4 of 15                  Initials         Form 3021  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



BK 4 0 2 2 PG 0 1 3 3

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



BK4022PG0135

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



-6(MD) (0602)                              Page 8 of 15                    Initials: DTS          Form 3021   1/01

BK4022PG0136

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



Initials: DTS

BK 4 0 2 2 PG 0 1 3 7

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials 

VMP®  -6(MD) (0602)                 Page 10 of 15                 Form 3021  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: DTS

BK 4 0 2 2 PG 0 1 3 9

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the**



BK 4 0 2 2 PG 0 1 4 0

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of        5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.



BK4022PG0141

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                _____ (Seal)
                                                 DALE T SAUL                 -Borrower


_____                _____ (Seal)
                                                                             -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                              -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                              -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                              -Borrower

BK4022PG0142

**STATE OF MARYLAND,** Prince George's _____ **County ss:**
I Hereby Certify, That on this 24th day of August 2012 before me, the subscriber, a
Notary Public of the State of Maryland, in and for the COUNTY OF Charles _____,
personally appeared **DALE T SAUL**

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
AS WITNESS: my hand and notarial seal.
My Commission Expires: 6/5/2015

_____
Notary Public

_TERESA M. THOMPSON_
_My Commission Expires_
_NOTARY_
_PUBLIC_
_06-05-2015_
_CHARLES COUNTY, MD_

**STATE OF** Maryland ____ Prince George's _____ **County ss:**
I Hereby Certify, That on this 24th day of August 2012 ,before me, the subscriber,
a Notary Public of the State of Maryland and for the County of Charles _____,
personally appeared Megan Mosko

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
funds in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.
AS WITNESS: my hand and notarial seal.
My Commission Expires: 6/5/2015

_____
Notary Public

_TERESA M. THOMPSON_
_My Commission Expires_
_NOTARY_
_PUBLIC_
_06-05-2015_
_CHARLES COUNTY, MD_

This is to certify that the within instrument was prepared **WELLS FARGO BANK, N.A.**

a party to the instrument.

_____
Nicholas Yotzy closer

Initials:

VMP-6(MD) (0602)                 Page 15 of 15                 Form 3021  1/01

# Maryland Lender and Originator Disclosures

**Instructions:** Insert the names and addresses of the Lender and Borrower. Insert the property address.

| Lender | Borrower |
|---|---|
| WELLS FARGO BANK, N.A. | DALE T SAUL |

800 WALNUT STREET

DES MOINES, IA 503093605

**Property Address**
3499 BROOKSIDE DRIVE, CHESAPEAKE BEACH, MD 20732

| Licensee Information |
|---|

**Instructions:** Maryland licensed lenders and originators should complete the blanks in this area. Maryland licensed lenders and originators do not need to sign this form. If you are not attaching a security instrument, see further instructions below.

WELLS FARGO BANK,

| Maryland Mortgage N.A. | Maryland Mortgage Loan STEVE HARPER |
|---|---|
| Lender Name | Originator Name |

| Maryland Mortgage | Maryland Mortgage Loan |
|---|---|
| Lender License | Originator License |
| Number | Number |

| Affidavits |
|---|

**Instructions:** If you are not attaching this document to a security instrument for filing, complete the liber/book and page number blanks below. Check the box(es) that apply, complete the applicable blanks, and sign.

If you are attaching this document to a security instrument, the term "Loan" means the mortgage loan secured by that security instrument, or if you are not attaching this document to a security instrument, "Loan" means the security instrument recorded at liber/book _____ , page _____ .

☐ Affidavit of Individual Mortgage Loan Originator

I, _____ , whose address is _____

_____ , hereby affirm under penalties of perjury that I am the individual who originated the Loan and, in connection therewith, I am exempt from the licensing requirements under Financial Institutions Article,§§ 11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM under penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

Signature _____     Date _____

Print Name _____

VMP ® Bankers Systems™
Wolters Kluwer Financial Services © 2008, 2010
KMFL 3631MD (MDAL) Rev 4/2010

VMP968MD) (1003).00
Page 1 of 2

BK4022PG0144

2

☐ **Affidavit of Lender**

I, _____, hereby affirm under penalties of perjury that I am
the _____ of _____
_____ ("Lender") that made the Loan. The
Lender's address is set forth above. I am duly authorized by the Lender to execute this Affidavit. The
Lender, in connection with the Loan, is exempt from the licensing requirements under the Financial
Institutions Article, §§ 11-501 through 11-524, Annotated Code of Maryland.

I SOLEMNLY AFFIRM under penalties of perjury and upon personal knowledge that the contents of the
foregoing paper are true.

Signature _____     Date _____
Print Name _____    Print Title _____

☒ **Affidavit of Lender (on its own behalf and on behalf of its employee who originated the Loan)**

I, _Julie Edward_, hereby affirm under penalties of perjury that I am
the _Vice President_ of _Loan Documentation_
_____ ("Lender") that made the Loan. The
Lender's address is set forth above. I am duly authorized by the Lender to execute this Affidavit. The
Lender, in connection with the Loan, is exempt from the licensing requirements under the Financial
Institutions Article, §§ 11-501 through 11-524, Annotated Code of Maryland. The employee of the Lender
who originated the Loan is exempt from the licensing requirements under Financial Institutions
Article, §§ 11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM under penalties of perjury and upon personal knowledge that the contents of the
foregoing paper are true.

Signature _Julie Edward_     Date _8/23/12_
Print Name _Julie Edward_    Print Title _Vice President of Loan Documentation_

☐ **Affidavit of Mortgage Broker (on behalf of its employee who originated the Loan)**

I, _____, hereby affirm under penalties of perjury that I am
the _____ of _____
_____ ("Broker") that brokered the Loan. The
Broker's address is _____
I am duly authorized by the Broker to execute this Affidavit. The Broker's employee, _____
_____, is the individual who originated the Loan. The
employee, in connection with the Loan, is exempt from the licensing requirements under Financial
Institutions Article, §§ 11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM under penalties of perjury and upon personal knowledge that the contents of the
foregoing paper are true.

Signature _____     Date _____
Print Name _____    Print Title _____

Lender and Originator Disclosures-MD
VMP ® Bankers Systems™
Wolters Kluwer Financial Services © 2009, 2010

VMP369B(MD) (1009).00
Page 2 of 2

BK4022PG0145

## AFFIDAVIT MADE PURSUANT TO SECTION 12-108(G)(3)
## OF THE TAX-PROPERTY ARTICLE OF
## THE ANNOTATED CODE OF MARYLAND

**THE** undersigned makes this oath, in due form of law and under the penalties of perjury, that the following is true to the best of my knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland, as follows:

1. That I am the original mortgagor of the Deed of Trust recorded in the Land Records of the County of Calvert, State of Maryland, in Liber 1780, Folio 592.

2. That the mortgaged property is my principal residence.

3. That the amount of unpaid principal of the original Deed of Trust being refinanced is **$148,980.83**.

**DATED** this __24th__ day of _____**August**_____, _**2012**_.

_____
Dale T. Saul

State of Maryland, County of Prince George's

I HEREBY CERTIFY THAT on this 24th day of August, 2012, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared __**Dale T. Saul**__, known to me (or satisfactorily proven) to be the person described in the foregoing instrument and made oath in due form of law, and under the penalties of perjury, that the matters and facts set forth herein are true.

As witness, my hand and notarial seal.

_____
NOTARY PUBLIC
My Commission Expires: 6/5/2015



**Exhibit C**

This Document Prepared By:
**CHEE THAO**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**DTO – MAIL STOP 3-2-8**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707-9991**

Tax/Parcel #: 03-103358
_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $152,600.00          Investor Loan No.:
Unpaid Principal Amount: $141,248.93           Loan No: (scan barcode)
New Principal Amount $143,750.87
Total Cap Amount: $2,501.94

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

Executed on this day: **DECEMBER 7, 2016**
Borrower ("I"):[1] **DALE T. SAUL**
Borrower Mailing Address: **3499 BROOKESIDE DRIVE, CHESAPEAKE BEACH, MARYLAND 20732**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **AUGUST 24, 2012** and the Note
("Note") date of **AUGUST 24, 2012**
Property Address ("Property"): **3499 BROOKESIDE DRIVE, CHESAPEAKE BEACH, MARYLAND 20732**

Legal Description:

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP ████████

Represents Redacted Information

LOT 26, PLAT THREE, IN THE SUBDIVISION KNOWN AS "BROOKESIDE", AS PER PLAT RECORDED AMONG THE LAND RECORDS OF CALVERT COUNTY, MARYLAND, IN LIBER ABE 1 AT FOLIO 270.

Prior instrument reference: Recorded on OCTOBER 1, 2012 in BOOK 4022 PAGE 0127, of the Official Records of CALVERT COUNTY, MARYLAND

This Loan Modification Agreement ("Agreement") is made on **DECEMBER 7, 2016** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

   B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

   C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

   D. I have made or will make all payments required within this modification process;

   E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is

Wells Fargo Custom Non HAMP

Page 2

agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

F. Borrower filed for relief under Chapter 13 of the United States Bankruptcy Code on **JULY 20, 2016**.

G. This agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

H. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Loan Documents between Lender and Borrower. Such agreement granted Lender a valid security interest and an enforceable lien on the property securing the loan.

I. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Loan Documents under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

J. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

K. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

## 2. The Modification.

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$143,750.87** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of **3.7500%** will begin to accrue on the New Principal Balance as of **DECEMBER 1, 2016** and the first new monthly payment on the New Principal Balance will be due on **JANUARY 1, 2017** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).   My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|-------------------------------|------------------------|-------------------|
| 480 | 3.7500% | 12/01/2016 | $578.63 | $336.59 | $915.22 | 01/01/2017 |

Wells Fargo Custom Non HAMP ▮▮▮▮▮▮

> \* This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

### 3. Loan Modification Terms.

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **AUGUST 1, 2016** to **JANUARY 1, 2017**. The first modified contractual due date is **JANUARY 1, 2017**.

B. The maturity date is **DECEMBER 1, 2056**.

C. The amount of Recoverable Expenses\* to be capitalized will be U.S. **$0.00**.

\*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. **$15.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$106.02**.

G. The amount of interest to be included (capitalized) will be U.S. **$2,207.00**.

H. The amount of the Escrow Advance to be capitalized will be U.S. **$294.94**.

### 4. Additional Agreements.

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then

Wells Fargo Custom Non HAMP ███████

due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to

Wells Fargo Custom Non HAMP▮▮▮▮▮▮

make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

E. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

F. If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

G. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

I. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L.  CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M.  If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N.  All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P.  In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q.  If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **DECEMBER 1, 2016**.

S.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T.  Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement

Wells Fargo Custom Non HAMP ▮▮▮▮▮

by **FEBRUARY 9, 2017.** If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

Wells Fargo Custom Non HAMP

In Witness Whereof, I have executed this Agreement.

Borrower:DALE T. SAUL

*Dale T. Saul* [Space Below This Line for Acknowledgments] Date **2 - 6 - 17**

**BORROWER ACKNOWLEDGMENT**

**STATE OF MARYLAND,
COUNTY OF** *Calvert*

Personally appeared before me, a Notary Public, in and for said county and state, on this **6th** day of *February*, 20 **17**, the within named personally appeared, **DALE T. SAUL**, known to me, or satisfactorily proven, to be the person whose name is subscribed to the within instrument and who acknowledges that he/she/they (circle one) executed the same for the purposes therein contained.

Notary Public

Print Name: *Kim Garrett*

My Commission expires: *4-22-19*

```
KIM R. GARRETT
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
MY COMMISSION EXPIRES APRIL 22, 2019
```

Prepared by:
CHEE THAO
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

RECORD AND RETURN TO:
FIRST AMERICAN TITLE CO.
DTO – MAIL STOP 3-2-8
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-9991

I hereby certify that the within instrument was prepared by **WELLS FARGO BANK, N.A.**, a party to the instrument:

(sign) _____ Printed Name: _____ Title: _____

Wells Fargo Custom Non HAMP

Page 9

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.

By: (print name)
  (title)

**Yared Daisso Areba**
Vice President Loan Documentation
(sign)

02/24/17
Date

_____ [Space Below This Line for Acknowledgnients] _____

**STATE OF MINNESOTA**

**COUNTY OF** Dakota

This instrument was acknowledged before me 02/24/17 _____ (date) by

Yared Daisso Areba _____ (name(s) of person(s)) as

Vice President Loan Documentation _____ (type of authority, e.g., officer, trustee, etc.) of WELLS

FARGO BANK, N.A. (name of party on behalf of whom the instrument was executed).

Notary Public

Printed Name: Tryphena V C Mitchell

My Commission Expires:
01/31/2019

TRYPHENA V C MITCHELL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

Vanderlyn C Mitchell

Date: **DECEMBER 7, 2016**
Loan Number: **(scan barcode)**
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **DALE T. SAUL**

Property Address: **3499 BROOKESIDE DRIVE, CHESAPEAKE BEACH, MARYLAND 20732**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_Dale T. Saul_                 **2·6·17**

Borrower:
**DALE T. SAUL**　　　　　　　　　　　　　　　　　Date

Wells Fargo Custom Non HAMP ███████

Page 11

## State of Maryland Land Instrument Intake Sheet

☐ Baltimore City          ☐ County: **CALVERT**

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only.*

**(Type or Print in Black Ink Only-All Copies Must Be Legible)**

| 1 | (☐ Check Box if Addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|
| **Type(s) of Instruments** | ☐ Deed | ☐ Mortgage | ☐ Modification | ☐ Other |
| | ☐ Deed of Trust | ☐ Lease | | |

| 2 | **Conveyance Type** **Check Box** | ☐ Improved Sale | ☐ Unimproved Sale | ☐ Multiple Accounts | ☐ Not an Arms |
|---|---|---|---|---|---|
| | | Arms-Length [1] | Arms-Length [2] | Arms-Length [3] | Length Sale [9] |

| 3 | **Tax Exemptions** (If Applicable) Cite or Explain Authority | Recordation | | |
|---|---|---|---|---|
| | | State Transfer | | |
| | | County Transfer | | |

| 4 | **Consideration and Tax Calculations** | Consideration Amount | | Finance Office Use Only | |
|---|---|---|---|---|---|
| | | Purchase Price/Consideration | $ | **Transfer and Recordation Tax Consideration** | |
| | | Any New Mortgage | $ | Transfer Tax Consideration | $ |
| | | Balance of Existing Mortgage | $ | X ( ) % = | $ |
| | | Other: | $ | Less Exemption Amount − | |
| | | | | Total Transfer Tax = | $ |
| | | Other: | $ | Recordation Tax Consideration | $ |
| | | | | X ( ) per 500 = | $ |
| | | Full Cash Value | $ | **TOTAL DUE** | $ |

| 5 | **Fees** | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|
| | | Recording Charge | $ | $ | |
| | | Surcharge | $ | $ | Tax Bill: |
| | | State Recordation Tax | $ | $ | |
| | | State Transfer Tax | $ | $ | C.B. Credit: |
| | | County Transfer Tax | $ | $ | |
| | | Other | $ | $ | Ag. Tax/Other: |
| | | Other | $ | $ | |

| 6 | **Description of Property** SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG ☐ (5) |
|---|---|---|---|---|---|---|---|
| | | | 03-103358 | | | | |
| | | Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |

| | **Location/Address of Property Being Conveyed (2)** |
|---|---|

| | Other Property Identifiers (if applicable) | | Water Meter Account No. |
|---|---|---|---|

Residential ☐ or Non-Residential ☐   Fee Simple ☐ or Ground Rent ☐   Amount: $

Partial Conveyance? ☐ Yes ☐ No   Description/Amt. Of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

| 7 | | Doc. 1-Grantor(s) Name(s) | Doc. 2-Grantor(s) Name(s) |
|---|---|---|---|
| **Transferred From** | | DALE T. SAUL | |
| | | Doc. 1-Owner(s) of Record, if Different from Grantor(s) | Doc. 2-Owner(s) of Record, if Different from Grantor(s) |

| 8 | | Doc. 1-Grantee(s) Name(s) | Doc. 2-Grantee(s) Name(s) |
|---|---|---|---|
| **Transferred To** | | WELLS FARGO BANK, N.A. | |
| | | New Owner's (Grantee) Mailing Address | |

| 9 | | Doc. 1-Additional Names to be Indexed (Optional) | Doc. 2-Additional Names to be Indexed (Optional) |
|---|---|---|---|
| **Other Names to Be Indexed** | | | |

| 9 | **Contact/Mail Information** | Instrument Submitted By or Contact Person | ☐ Return to Contact Person |
|---|---|---|---|
| | | Name: LOSS MITIGATION TITLE | |
| | | Firm: SERVICES FIRST AMERICAN TITLE | ☐ Hold for Pickup |
| | | Address: 3 FIRST AMERICAN WAY | |
| | | SANTA ANA, CA 92707 | ☐ Return Address Provided |

| 11 | IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER* | | |
|---|---|---|---|
| **Assessment Information** | ☐ Yes ☐ No | Will the property being conveyed be the grantee's principal residence? | |
| | ☐ Yes ☐ No | Does transfer include personal property? If yes, identify: | |
| | ☐ Yes ☐ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). | |

**Assessment Use Only - Do Not Write Below This Line**

☐ Terminal Verification   ☐ Agricultural Verification   ☐ Whole ☐ Part   ☐ Trans. Process Verification

| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | |
|---|---|---|---|---|
| Year | Geo | Map | Sub | Block |
| Land | Zoning | Grid | Plat | Lot |
| Buildings | Use | Parcel | Section | Occ. Cd. |
| Total | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution: *White - Clerk's Office*
*Canary - SDAT*
*Pink - Office of Finance*
*Goldenrod - Preparer*

Debtor name:  DALE T SAUL                    Bk Filing Date:  7/20/2016               First PP PmtDueDate/Amt:  8/1/2016 / $1029.40

**Exhibit 1**

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied Disbursed | Amount Paid to Fees | Opt Insu |
|---|---|---|---|---|---|---|---|---|---|---|
| | 8/1/2016 | $1,029.40 | 8/12/2016 | $1,029.40 | 8/12/2016 | $262.84 | $443.87 | $317.69 | | |
| | | | 9/23/2016 | $930.29 | | | | | | |
| | | | 10/21/2016 | $930.29 | | | | | | |
| | 9/1/2016 | $1,029.40 | | | 10/24/2016 | | | | | |
| | 10/1/2016 | $1,029.40 | | | 10/24/2016 | $263.66 | $443.05 | $317.69 | | |
| | | | 12/2/2016 | $930.29 | | | | | | |
| | 11/1/2016 | $1,029.40 | | | 12/5/2016 | | | | | |
| | 12/1/2016 | $1,044.04 | | | 12/5/2016 | $264.48 | $442.23 | $317.69 | | |
| | | | 12/30/2016 | $915.22 | | | | | | |
| | 1/1/2017 | $915.22 | | | 1/5/2017 | $265.31 | $441.40 | $322.69 | | |
| | | | 2/10/2017 | $915.22 | | | | | | |
| | 1/1/2017 | ($915.22) | | | 2/15/2017 | ($265.31) | ($441.40) | ($322.69) | | |
| | | | 2/16/2017 | $294.94 | 2/16/2017 | | | $1,042.01 | | |
| | | | 2/21/2017 | $15.00 | | | | | | |
| | 1/1/2017 | $915.22 | | | 3/6/2017 | $129.41 | $449.22 | $336.59 | | |
| | 2/1/2017 | $915.22 | | | 3/6/2017 | $129.81 | $448.82 | $336.59 | | |
| | 3/1/2017 | $915.22 | 3/10/2017 | $915.22 | 3/10/2017 | $130.22 | $448.41 | $336.59 | | |
| | | | 4/7/2017 | $1,008.08 | | | | | | |
| | 4/1/2017 | $915.22 | | | 4/10/2017 | $130.63 | $448.00 | $336.59 | | |
| | | | 10/24/2017 | $1,879.54 | | | | | | |
| | 5/1/2017 | $939.77 | | | 10/25/2017 | $131.03 | $447.60 | $361.14 | | |
| | 6/1/2017 | $939.77 | | | 10/25/2017 | $131.44 | $447.19 | $361.14 | | |
| | | | 10/27/2017 | $939.77 | | | | | | |
| | 7/1/2017 | $939.77 | | | 10/30/2017 | $131.85 | $446.78 | $361.14 | | |
| | 8/1/2017 | $939.77 | | | | | | | | |
| | 9/1/2017 | $939.77 | | | | | | | | |
| | 10/1/2017 | $939.77 | | | | | | | | |
| | 11/1/2017 | $939.77 | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Totals | | $15,400.91 | | $10,703.26 | | $1,705.37 | $4,465.17 | $4,424.86 | $0.00 | $0.00 |

Debtor name:  DALE T SAUL                    Bk Filing Date:  7/20/2016          First PP PmtDueDate/Amt:  8/1/2016 / $1029.40

| Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|
| | $0.00 |
| $1,029.40 | $0.00 |
| | $930.29 |
| | $1,860.58 |
| $5.00 | $1,855.58 |
| $1,024.40 | $831.18 |
| | $1,761.47 |
| $5.00 | $1,756.47 |
| $1,024.40 | $732.07 |
| | $1,647.29 |
| $1,029.40 | $617.89 |
| | $1,533.11 |
| ($1,029.40) | $2,562.51 |
| $1,042.01 | $1,815.44 |
| | $1,830.44 |
| $915.22 | $915.22 |
| $915.22 | $0.00 |
| $915.22 | $0.00 |
| | $1,008.08 |
| $915.22 | $92.86 |
| | $1,972.40 |
| $939.77 | $1,032.63 |
| $939.77 | $92.86 |
| | $1,032.63 |
| $939.77 | $92.86 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| $10,610.40 | |

Case Number:  1619741                                                                        Page  2  of  2

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Dale Thomas Saul** |
| | First Name_____Middle Name_____Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name_____Middle Name_____Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MARYLAND |
| Case number | |

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| 1.1 | **What is the property?** Check all that apply | |
|---|---|---|
| **3499 Brookeside Dr** | ☑ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| **Chesapeake Beach**  MD  **20732-0000** | ☐ Manufactured or mobile home | **Current value of the entire property?** / **Current value of the portion you own?** |
| City   State   ZIP Code | ☐ Land | $285,500.00 / $285,500.00 |
| | ☐ Investment property | |
| | ☐ Timeshare | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | ☐ Other | **Fee simple** |
| **Calvert** | **Who has an interest in the property?** Check one | |
| County | ☑ Debtor 1 only | |
| | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ Check if this is community property (see instructions) |
| | ☐ At least one of the debtors and another | |
| | Other information you wish to add about this item, such as local property identification number: | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...................................................................=>  | $285,500.00

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com   Best Case Bankruptcy